Lonnie FAUSETT, Plaintiff,

v.

AMERICAN RESOURCES MANAGEMENT CORPORATION, a Utah corporation, and John Does I through X, Defendants.

Civ. No. C-80-0110.

United States District Court, D. Utah, C. D.

June 30, 1982.

---

7. See 29 U.S.C. § 171(a).

Thomas A. Quinn, James S. Jardine, Ray, Quinney & Nebeker, Salt Lake City, Utah, for plaintiff.

LeRoy S. Axland, J. Michael Hansen, Suitter, Axland & Armstrong, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION

WINDER, District Judge.

On November 1, 2, 7, 8 and 9 of 1979 plaintiff entered into a series of transactions in which he sold short shares of the stock of defendant American Resources Management Corporation (hereinafter referred to as "ARMCOR"). These transactions were made on the over-the-counter market through broker-dealers located in Salt Lake City, Utah. Plaintiff alleges that in October and November of 1979 and continuing to the date of the complaint, ARMCOR and defendants John Does I through X violated the prohibitions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.[1] Specifically plaintiff alleges that defendants

> employed a device, scheme or artifice to defraud, made untrue statements of material fact and omitted to state material facts necessary to make the statements made in the light of the circumstances under which they were made not misleading, and engaged in acts, practices and courses of business which operated as a fraud upon the plaintiff, and upon Peterson and Lani, who bought and sold ARMCO stock in the over-the-counter market. . . .

Amended Complaint ¶ 10. Allegedly, this wrongful conduct artificially inflated the price of ARMCOR stock thereby "forcing" plaintiff to purchase more shares of said stock in order to cover his short sales. Plaintiff claims he has been injured in the amount of $90,963.00. Plaintiff has also been assigned the claims of Dorothy Lani and David Peterson, who, acting upon the advice of plaintiff, also sold short shares of ARMCOR in November 1979. These two claims amount to $3,388.00. Before this court are two motions; defendants' motion for summary judgment and plaintiff's motion for partial summary judgment.

---

1. The amended complaint also alleges a violation of Utah Code Ann. § 61–1–22. However, plaintiff concedes that this claim falls outside the reach of this statute and ought to be dismissed. Memorandum in Opposition to Defendants' Motion for Summary Judgment 25.

## I.

Defendant ARMCOR moves for summary judgment on the basis that plaintiff could not, as a matter of law, have relied upon ARMCOR's alleged misrepresentations and omissions in making his investment decision to sell short shares of ARMCOR stock. Furthermore, defendant maintains that expansion of the Rule 10b–5 implied remedy to encompass plaintiff's cause of action is contrary to recent Supreme Court decisions.

Although recognizing that reliance is typically an element that must be established in order to maintain a 10b–5 cause of action, plaintiff relies on the fraud-on-the-market theory recognized in other jurisdictions [2] to supply the requisite reliance or to obviate its necessity.

Reliance provides the causal nexus between the defendants' conduct and the plaintiff's injury. Whether this is referred to as causation in fact, *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228, 238 (2nd Cir. 1974), or is broken down into transaction causation and loss causation, *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2nd Cir. 1974) *cert. denied* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), the gist is still to provide that causal nexus. In cases involving affirmative misrepresentations, the reliance requirement is met if " 'the misrepresentation is a substantial factor in determining the course of conduct which results in [the investor's] loss.' " *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 102 (10th Cir. 1971) *cert. denied* 404 U.S. 1004, 92 S.Ct.

564, 30 L.Ed.2d 558 (1971), 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972). Because this type of proof is virtually impossible to provide in cases involving primarily nondisclosure, this circuit, in reliance on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), has determined that in such cases proof of reliance is unessential. *Holdsworth v. Strong*, 545 F.2d 687, 695 (10th Cir. 1976) *cert. denied*, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977). This, however, does not eliminate reliance as an element. "[O]nce causal connection is proven by showing materiality, that is to say, whether a reasonable investor would have considered the withheld facts important, ... the reliance element is inferred." *Id.* This language includes in its coverage facts which are different than those of *Affiliated Ute*.[3] It is not limited to cases involving face-to-face transactions or cases involving some kind of "general reliance" on the defendants' expertise. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 884 (5th Cir. 1973). Indeed, the relationship between the parties appears to be irrelevant. It is also not limited to cases involving *only* nondisclosure.[4] Fraud-on-the-market goes one step further and allows reliance on the market to substitute for reliance on the defendant or the defendant's conduct even in cases involving primarily misrepresentation. This theory also presumes that the reliance is justified. *See generally, Holdsworth*, 545 F.2d at 696. Although rejection of this theory can be supported by the language in *Holdsworth*, such

---

**2.** Fraud-on-the-Market has been recognized in some form by the Second, Fifth and Ninth Circuits. *See e.g., Panzirer v. Wolf*, 663 F.2d 365 (2nd Cir. 1981); *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (en banc); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

**3.** The plaintiffs in *Affiliated Ute* were Indians who sold shares in their tribal corporation to a bank, which failed to reveal that the bank itself was making a market in the shares at a higher price for sale to outside investors. The unsophisticated plaintiffs relied on the defendant's familiarity with the market for their shares. The Supreme Court found that the defendant had a duty to disclose the material fact that it

was reselling the shares at a profit. It is not clear whether the duty to disclose arose from a fiduciary relationship or from the fact that the bank was making a market for the shares.

**4.** Defendants argue that the holding of *Affiliated Utes* is limited to cases involving only nondisclosure. However, the Supreme Court spoke in terms of cases involving *primarily* a failure to disclose, not cases involving *only* a failure to disclose. It appears from plaintiff's complaint that this could arguably be a case involving primarily a failure to disclose in which event reliance would be inferred and defendants' motion for summary judgment would be denied.

a conclusion would need to be reevaluated under the unique facts of this case.

Critical to the fraud-on-the-market theory is the assumption that market prices respond to information disseminated (or not disseminated). This is sometimes referred to as an efficient market. *See*, 3 A. Bromberg, Securities Law § 8.6 (1981). In such a market, the investor who never hears the deceptive statements but instead relies on the integrity of the market is not necessarily careless or undeserving. *The Fraud-On-The-Market Theory*, 95 Harv.L.Rev. 1143, 1154 (1982).

> A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations.

*Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir. 1975) *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Although the investor's reliance is indirect it is real and the resulting damage is the same as if the investor had read or heard the deceptive material. "The market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price." *In Re LTV Securities Litigation*, 88 F.R.D. 134, 143 (N.D.Tex.1980).

■ This theory is also premised upon the assumption that the securities acts were not enacted just to provide full disclosure or to foster informed investment decisions but rather they were designed " 'to protect investors against fraud and . . . to promote ethical standards of honest and fair dealing.' " *Shores v. Sklar*, 647 F.2d 462, 470

(5th Cir. 1981) (en banc). The fraud-on-the-market theory is antithetical to full disclosure because it allows investors who do not make the effort to read disclosed information to still recover. However, by expanding the class of those who can recover for damages resulting from misrepresentations, it does provide greater protection against fraud. Deciding which of these two policies underlies the securities acts is not necessary to resolving the issues before this court. However, this court rejects the fraud-on-the-market theory and continues to require proof of reliance in cases involving primarily misrepresentations. Otherwise, an investor could "recover in some circumstances even though he did not read and rely on the defendants' public disclosures. [If such were the case,] then no one need pay attention to those disclosures and the method employed by Congress to achieve the objective of the 1934 Act, [whatever it might be, would be] defeated." *Shores*, 647 F.2d at 483 (Randall J. dissenting). "Whether disclosure is viewed as a goal or as a mechanism to achieve a goal, it is crucial to the way in which the federal securities laws function." *Id.* It is not the prerogative of the courts to substitute their preferred method of achieving the purposes of a statute for that of Congress. This rejection of the fraud-on-the-market theory does not preclude recovery in this case.

■ The pivotal fact which makes this case different than other misrepresentation cases which address the reliance requirement, is the point in time at which the alleged fraud impacts the investment decision. In the normal case, the fraud artificially inflates the price of the stock prior to the making of the investment decision. In this case, the artificial inflation of the stock price occurred *after* Mr. Fausett had committed to sell short. Theoretically, disclosure puts an investor into a position from which he can help himself by relying on disclosures that others are obligated to make.[5] However, when a person sells short

---

5. Whether disclosure enhances informed investment decisions is seriously disputed. The required disclosures are of such a nature that

"they can be used effectively only by professionals." *See*, H. Kripke, The SEC and Corpo-

and the misrepresentations are not made or the fraud is not completed and the impact from such deceit is not felt until after the commitment to sell short is made, the investor is helpless. He cannot protect himself against deceptive practices which occur or are completed during the interim between his decision to sell short and the time when he is required to fulfill that obligation. In essence, he is "forced" to purchase additional shares in order to cover his short sales. *Cf. Schlick.*[6] To protect such an investor he must be allowed to recover against those who practice such deceit.

Creating an exception to the reliance requirement in cases involving short sales encourages rather than discourages full and fair disclosure. If all of the material facts concerning the ARMCOR stock had been properly disclosed, the normal market forces would have caused the stock prices to be validly set and plaintiff would not have suffered an actionable loss. This is not to say that reliance is not an element of a 10b–5 cause of action in cases of short sales. Just as in cases involving primarily non disclosure, reliance is presumed. This presumption can be rebutted in at least two ways: (1) by proving that the misrepresentations or omissions were not material or by proving that an insufficient number of shares was traded in reliance on the misrepresentations to have inflated the price; and (2) by proving that the plaintiff would have made the same investment decision even had he known the true nature of the facts which were allegedly misrepresented. *Blackie,* 524 F.2d at 906. Defendants argue that by virtue of a position in ARMCOR formerly held by plaintiff, that plaintiff was well aware of the true nature of the facts that were allegedly misrepresented to the public. If this is demonstrated at trial, then defendants will have rebutted the presumption of reliance.

Defendants refer to the Supreme Court's decisions in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Ernst & Ernst v. Hochfelder,* 424 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); and *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and suggest that further expansion of private remedies under the federal securities laws will not be permitted. In these cases, the court refused to provide a remedy for a wrong that was beyond the statute in question, to expand the class of plaintiffs who may sue under rule 10b–5 beyond that of purchasers and sellers and to eliminate scienter as an element of a 10b–5 cause of action.[7] A presumption of reliance in the short seller situation encompasses none of these evils. Plaintiff is clearly within the class of "purchaser or seller" which is the class intended to be protected by rule 10b–5 and reliance, although presumed, is still an element of a 10b–5 cause of action. Such a presumption, by promoting full disclosure, is consonant with the Supreme Court's position that "the Securities Acts are to be broadly construed

---

rate Disclosure 14 (1979); 1 L. Loss, Securities Regulation 124 (2nd ed. 1961).

**6.** In *Schlick,* minority shareholders of a target company alleged that the acquiring company, Penn-Dixie Cement Corp., manipulated the market to secure an advantageous exchange ratio between its own shares and those of the target company in a merger. Penn-Dixie allegedly acquired voting control of the target company and depressed the market value of the target's stock by using the target's assets for its own benefit. Penn-Dixie then caused the target to approve the resulting unfair ex-

change ratio as part of a merger agreement. The court stated that the plaintiff "was *forced* to sell his Continental shares to Penn-Dixie on the basis of an exchange ratio that reflected adversely the manipulated market value of Continental stock, and that he sustained injury accordingly." *Schlick,* 507 F.2d at 381 (emphasis added).

**7.** Scienter can now be established by a showing of recklessness. *Hackbart v. Holmes,* 675 F.2d 1114 (10th Cir. 1982).

to achieve their remedial goals." *Hackbart v. Holmes*, 675 F.2d 1114, 1117 (10th Cir. 1982); *Affiliated Utes*, 406 U.S. at 151, 92 S.Ct. at 1471.

## II.

Defendant's second amended counterclaim sets forth five claims for relief against plaintiff. Claim one requests the recovery of short swing profits made by plaintiff in violation of section 16(b) of the Securities Exchange Act of 1934 as amended, 15 U.S.C. § 78p(b); the second and third claims allege that plaintiff, as an officer of ARMCOR, breached a fiduciary duty by trading ARMCOR stock on the basis of inside information; the fourth claim alleges defamation and slander; and the fifth claim is a claim for punitive damages related to claim four.[8] Plaintiff's motion for partial summary judgment seeks to have dismissed claims 2, 3 and 5 in their entirety and parts of claim four. On the basis of *Diamond v. Oreamuno*, 24 N.Y.2d 494, 248 N.E.2d 910, 301 N.Y.S.2d 78 (1969), defendants in claims two and three of their counterclaim, request that plaintiff be required to disgorge all profits received from all sales of ARMCOR stock occurring after September 30, 1979 which were based upon inside information and that plaintiff be held liable for the damage to ARMCOR's reputation resulting from the public discovery that one of its officers was trading the stock of the company on the basis of inside information.

Since *Diamond* was decided, few courts have had the occasion to consider the problem there presented. *Diamond* held that it is a breach of fiduciary duty to exploit information acquired by virtue of a fiduciary relationship without accounting to the principal for all profits derived therefrom and that it is not necessary to allege damage to the principal in order to recover these profits. The court went on to state that even if damages were an essential requirement of a breach of fiduciary duty cause of action it could be inferred that insider trading causes some harm to the corporation, such as, impugning the corporate name and impairing the marketability of the corporation's stock. Unlike the case before this court, *Diamond* was not faced, nor was any of its progeny, with the question of liability for *damages* resulting from a recreant's use of inside information. Those cases dealt only with an accounting for profits.

One such case, *Cambridge Fund, Inc. v. Abella*, 501 F.Supp. 598 (S.D.N.Y.1980), adopted, without discussion, the law of *Diamond* as being the law of Delaware. Contrariwise, with extensive discussion, the Florida Supreme Court in *Schein v. Chasen*, 313 So.2d 739 (Fla.1975), refused to extend the reach of *Diamond* to tippees who traded on the basis of non-public information received from corporate insiders. The court also required, by reason of Florida precedent concerning derivative actions, that actual damage to the corporation be alleged. *Id.* at 746. Indeed, the court implied that they rejected *Diamond* in its entirety. *Id.* In *Freeman v. Decio*, 584 F.2d 186 (7th Cir. 1978), the seventh circuit, in determining the law of Indiana, forthrightly rejected the *Diamond* position. The *Freeman* court viewed *Diamond* as an example of judicial securities regulation that was made unnecessary by subsequent developments in the law which have alleviated the inadequacy of the remedies for insider trading perceived by the *Diamond* court.

Although the question of liability for damages resulting from an insider's use of non-public information is unique and interesting, for the reason stated below, it need not be decided by this court.

■ Breach of fiduciary duty is a tort action which requires an analysis of the elements of a tort; duty, breach of that duty, injury and causation.

■ The *Freeman* court viewed the case before them as one involving an insider's duty of loyalty. This duty was described as encompassing only the use of corpo-

---

**8.** The fifth claim appears to allege extortion. However, defendant states that it is only a claim for punitive damages relating to the fourth claim for relief.

rate assets for personal gain and the diversion of corporate opportunities to personal use. A corporate officer's duties to the corporation are not restricted to these two situations. Whether it be called a duty of loyalty or some other duty, it is unquestioned that as a fiduciary, a corporate officer is charged with the duty of caring for the property of the corporation and to protect against its impairment or loss. 3 W. Fletcher, Cyclopedia Corporations § 1011 (rev.perm.ed.1975). Goodwill is a valuable corporate asset which is and should be jealously protected. Any action by a corporate officer which diminishes the value of that asset would be a breach of fiduciary duty for which the officer should be held liable. Defendant states a legitimate cause of action when it alleges that "[b]y reason of plaintiff Fausett's use of inside information in the short sale of his ARMCOR stock, defendant ARMCOR's business reputation has been damaged in the securities trading community...." Second Amended Counterclaim ¶ 27. However, these duties are imposed upon a corporate officer by virtue of the position held by that person. Just as there is no duty until there is an implied or express acceptance of the office, id. at § 994, the duty expires once the office is relinquished. All of the conduct complained of in claims two and three of the counterclaim occurred after plaintiff had relinquished his position as controller with ARMCOR. Plaintiff was no longer burdened with any fiduciary duties in relation to defendant. There being no duty, there can be no cause of action. Claims two and three of the counterclaim must be dismissed.

The defamatory statements alleged in claim four of the counterclaim to have been made by plaintiff consisted of claims that "ARMCOR's management had manipulated the stock of ARMCOR and had, in addition, failed to honestly report the status of the business of ARMCOR...." Second Amended Counterclaim ¶ 29. Publication of these statements is alleged to have been made to Richard Christensen, President of ARMCOR, Keith Hebertson, Vice President of ARMCOR, Tim Themy and Robert Edelstein. Plaintiff concedes that the allegation of publication to Mr. Edelstein precludes total dismissal of the fourth claim, Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment 8, but insists that those portions of the fourth claim relating to the other three individuals must be dismissed.

Plaintiff argues that communication to corporate management, in this case Messrs. Christensen and Hebertson, is not publication of defamation of the corporation. This is a question of first impression for the Utah Courts. It also appears that no other jurisdiction has addressed this question. However, the answer is evident.

There are recognized distinctions between the application of the principles of libel to individuals and their application to corporations, growing largely out of the differences between natural and artificial persons. One of those distinctions must be made in relation to publication of a business defamation. The alleged defamation of ARMCOR relates to actions of its management of which Messrs. Christensen and Hebertson are the chief principals. The law of defamation protects against the impugning of one's reputation or causing his alienation from his peers. There simply exists no potential for ARMCOR's reputation to be reduced or for ARMCOR to be alienated from its managers, customers, shareholders, institutional lenders, etc., when the defamatory statements are made to its management. In essence the management is the corporation for purposes of communication. This was at least impliedly recognized by the Fifth Circuit in *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.*, 378 F.2d 377, 384 (5th Cir. 1967). The law is clear that there is no publication when the communication is made to the person defamed. W. Prosser, Torts § 113 (4th ed. 1971); Restatement (Second) of Torts § 577(1) (1976). Prosser's statement that publication "may be made to the defendant's own agent, employee or officer, even where the defendant is a corporation," *id.* at § 113, is inapposite. The cases cited in support of this statement relate to corpo-

rate defendants where there has been intra-corporation communication. *E.g., Cochran v. Sears, Roebuck & Co.*, 72 Ga.App. 458, 34 S.E.2d 296 (1945). They do not involve corporate plaintiffs and communications to their management. Likewise, the cases that have held that communications to servants or agents of the defamed person or corporation constitute publication, Restatement (Second) of Torts § 577 Comment e (1977), are inapplicable. These cases discuss the issue of whether statements from one corporate employee to another employee of the same corporation constitute publication. *E.g., M. F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167 (10th Cir. 1968); *Jones v. Golden Spike Corp.*, 623 P.2d 970, 971 (Nev.1981). Again, these cases do not involve communications with corporate management. The ruling of this court that communication to corporate management of alleged defamation of the corporation does not constitute publication, requires that those portions of the fourth claim for relief of the counterclaim relating to Messrs. Christensen and Hebertson must be dismissed.

▬▬▬ The remaining question of publication relates to Tim Themy. Defendants maintain that at the time of trial they will prove "that Fausett made defamatory and libelous statements to agents and representatives of ARMCOR, Robert Edelstein and Tim Themy." Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment 17. A proffer of proof is insufficient to defeat a motion for summary judgment. The only evidence cited by defendant that plaintiff made publication to Mr. Themy was a statement in Mr. Themy's deposition to the effect that he knew that plaintiff was experiencing some difficulty with defendant and was contemplating initiating litigation if his interests were not satisfied. *Id.* at 5. This does not even imply that "ARMCOR's management had manipulated the stock of ARMCOR and had, in addition, failed to honestly report the status of the business of ARM-COR. . . ." Second Amended Counterclaim ¶ 29. There being no evidence of publication to Mr. Themy, summary judgment as

to those portions of the fourth claim for relief of the counterclaim relating to him must be granted.

▬▬▬ The fifth claim for relief of the counterclaim is a claim for punitive damages for the defamation alleged in the fourth claim. Obviously, this is now limited to communications with Robert Edelstein. In order to sustain a claim for punitive damages in a defamation case there must be a showing of actual malice. Malice cannot be implied for this purpose. *Berry v. Moench*, 8 Utah 2d 191, 331 P.2d 814, 820 (1958). "Actual malice . . . may be found only when it appears that the actor was motivated by spite, hatred or ill will against the subject . . ." *Id.* at 331 P.2d 820. It must have as an object to hold the defamed up to hatred, contempt or ridicule, or to injure the defamed in its business. *Id.* The amended counterclaim meets this criteria. In paragraph 38 thereof it is alleged that

[t]he action of plaintiff, his agents, and those in active concert and participation with him was malicious, willful, wanton, reckless and was done with the sole purpose of damaging and destroying the name and reputation of ARMCOR and, as such, this conduct gives rise to punitive damages in favor of ARMCOR. . . .

▬▬ The evidentiary dispute centers on whether the communications to Mr. Edelstein were made in order to hold ARMCOR up to hatred, contempt or ridicule or to injure its business in order to force compliance with plaintiff's demand. The evidence is inconclusive. Therefore, summary judgment as to punitive damages arising from publication of defamatory statements to Mr. Edelstein must be denied. However, a claim for punitive damages for defamation and slander is necessarily a part of the multiple remedies requested as part of the fourth claim for relief. For this reason the fifth claim is stricken and the request for punitive damages contained in the Prayer for Relief shall remain as an appendage to the fourth claim for relief.

### III.

Counsel for plaintiff is directed to submit an appropriate order in accordance with this decision, agreed to as to form by both parties. The proposed form of judgment shall be submitted within ten (10) days of the entry of this opinion.