Albert M. ZLOTNICK, individually and on behalf of all others similarly situated

v.

TIE COMMUNICATIONS, et al.

Civ. A. No. 85–1364.

United States District Court, E.D. Pennsylvania.

June 22, 1987.

Donald B. Lewis, Philadelphia, Pa., David B. Zlotnick, Bala Cynwyd, Pa., for plaintiffs.

David H. Pittinsky, Philadelphia, Pa., Skadden Arps Slate Meagher & Flom, George A. Zimmerman, New York City, Edward J. Yodowitz, for TIE Communications.

## MEMORANDUM

GILES, District Judge.

Plaintiff has moved for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) on behalf of all persons or entities, who from January 1, 1983 to June 30, 1983, made a short sale of the stock of Technicom International, Inc. ("Technicom") and who sustained a financial loss in subsequently covering their short position. Albert Zlotnick's amended complaint alleges three distinct grounds for relief: defendants' alleged misrepresentations and omissions in connection with the sale of its securities violate (1) section 9 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78i (1982); (2) section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1985); and (3) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), 1962(d) (1982).

Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). They contend, *inter alia*,[1] that plaintiff has failed

---

1. Defendants also contend that plaintiffs have failed to state more than conclusory allegations of fraud and, hence, do not meet the specificity requirements set forth in Fed.R.Civ.P. 9(b). I

to set forth any facts which demonstrate that his alleged injury was caused in fact by defendants' conduct. For the reasons which follow, defendants' motion shall be granted and plaintiff's complaint shall be DISMISSED.

## I. FACTS

Plaintiff claims that after its formation in 1981, Technicom consummated an initial public offering of its stock at a price of $9.75 per share. Plaintiff avers that during 1982, defendants engendered interest in Technicom stock and inflated its market value by promoting the company with "highly positive statements" as to the company's earning prospects and by causing two stock splits. Plaintiff cites to a six-hundred percent (600%) increase in the selling price of the stock from May to December 1982.

On January 13, 1983, plaintiff sold short[2] 1,000 shares of Technicom at $16.875 per share. Again, five days later, he sold short an additional 1,000 shares of Technicom at an average of $19.30 per share. Plaintiff made the short sale based on his own analysis of Technicom's earnings and prospects. Pl's Am. Compl. at ¶ 21. An experienced investor, plaintiff exercised his own business judgment in basing his market analysis on (1) defendant's price-earnings ratio—plaintiff believed that the company's stock was selling at a ratio equal to fifty times its current annualized earnings and (2) increased competition—plaintiff believed that the company faced increasing competition that would likely diminish its profit margins and depress its future earnings. In making his investment decision in January, 1983, plaintiff did not rely upon or believe Technicom's alleged misleading statements, nor did he rely upon the market price of the stock as an indication of its true value. He chose to bet against the market, not with it. He gambled that the market value of the stock would plummet at some point in the future when the general investor public discovered the proper means of evaluating the stock. Necessarily, he believed that it was investor ignorance which was causing the price of the stock to rise.

Plaintiff's allegations of securities violations by defendants do not involve any preinvestment activity. Zlotnick claims that defendants undertook to maintain artificially or to inflate the price of Technicom through various stratagems. Each of these occurred after his commitment to purchase Technicom securities at some point in the future.

By March 14, 1983, the price of Technicom stock had risen above $33.00 per share. Plaintiff chose to buy in and thereby cover his short position at that price. As a result of this purchase, plaintiff claims to have lost $35,000.00, the difference between the original transaction price

do not reach these grounds asserted for dismissal of the complaint. *See Seville Industrial Machinery v. Southmost Machinery*, 742 F.2d 786, 792 (3d Cir.1984).

**2.** Short selling has been described as
a device whereby the speculator sells stock which he does not own, anticipating that the price will decline and that he will thereby be enabled to "cover," or make delivery of the stock sold, by purchasing it at the lesser price. If the decline materializes, the short seller realizes as a profit the differential between the sales price and the lower purchase or covering price.
Stock Exchange Practices, Report of Com. on Banking & Currency, S.Rep. No. 1455, 73d Cong., 2d Sess. 50–51 (1934), *cited in* L. Loss, *Fundamentals of Securities Regulation* 711–12 (1983). *See also* SEC Rule 3b-3. Selling short is the opposite of the paradigmatic securities transaction. When short selling, the investor sells first, anticipating a decline in the purchase price of the stock. In the usual transaction, the investor makes a purchase anticipating a rise in price. He subsequently sells when the price of the stock rises to a level sufficient to confer a sizeable monetary gain. *See Fryling v. Merrill Lynch, Pierce, Fenner & Smith*, 593 F.2d 736, 740 n. 2 (6th Cir.1979).

In his treatise on securities law, Loss discusses the historical disdain expressed by government officials over the practice of short-selling. *Id.* at 712–17. Professor Loss quotes the following jingle coined by nineteenth-century financial buccaneer Daniel Drew: " 'He that sells what isn't his'n, must buy it back, or go to prison.' " *Id.* at 713 (citing B. White, *The Book of Daniel Drew* 180 (1950)). This doggerel exhibits, not humor, but the simple fact that the short sale is an investor's gambling device—act at one's own risk.

and the buy-out price. Although plaintiff claims that the market value of Technicom stock decreased from $33.50 per share to $7.50 per share over the one-year period following the short sale, he does not seek relief for any additional loss. Plaintiff claims that the drop in price per share is indicative of defendants' overstatement of the company's earnings and prospects as well as other sham business judgments.

While plaintiff views the purchase of stock to cover his sale as "the transaction," the court views plaintiff's cause of action as based on one transaction. The court finds that the sale and subsequent covering of the sale of stock are the two elements of one short sale transaction. *See e.g.,* Stock Exchange Practices, Report of Com. on Banking & Currency, S.Rep. No. 1455, 73d Cong., 2d Sess. 50–51 (1934).

## II. DISCUSSION

It is well-established that a complaint shall not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted)). All factual allegations of the complaint are to be accepted as true and *reasonable* inferences will be drawn to aid the pleader. *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). However, a reviewing court will not create inferences in favor of plaintiff where the face of the pleadings does not so permit.

■ Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff alleges a 10(b) violation.[3] To establish such a violation plaintiff must show "1) a false representation of 2) a material 3) fact; 4) defendant's knowledge of its falsity and his intention that plaintiff rely on it; 5) the plaintiff's reasonable reliance thereon; and 6) his resultant loss. *Peil v. Speiser,* 806 F.2d 1154 (3d Cir.1986). *Peil* allows plaintiff to satisfy the reliance requirement by showing defendants made material misrepresentations. *Id.* at 1161. While *Peil* provides a method to satisfy the reliance requirement without showing actual reliance, it did not alter the requirement that all the other necessary elements for maintaining a 10(b) action must be met. Thus, plaintiff must show that but for the defendant's misrepresentation or omission, he would not have acted.[4] The alleged activities of the defendant did not directly or indirectly cause plaintiff's investment loss. Plaintiff has emphasized his own investment knowledge and his own market analysis as the basis for his investment decision. Zlotnick erroneously contends that under *Peil,* he has satisfied his burden of proof requirement of transaction causation by showing that defendants made material misrepresentations. In *Peil,* the Third Circuit retained the requirement that in a 10(b) action, a plaintiff must still show a causal connection between defendants' action and plaintiff's purchase of stock. *Peil* n. 11 at 1161. Zlotnick has not demonstrated a causal connection between defendants' action and his purchase of stock. Nothing done by defendants whether said or omitted was a factor in plaintiff's decision to short sell. Therefore, plaintiff cannot establish a 10(b) violation.

Plaintiff contends that *Peil* requires this court not dismiss his 10b–5 action. On the contrary, I find that *Peil* supports dismissal. Under the fraud on the market theory, a plaintiff can establish causation for a 10b–5 action by showing that "in making [his] purchase [he] relied on the price of the stock, which in turn had been skewed by fraudulent actions." *Id.* at 1156. However, fraud on the market is not an irrebuttable presumption. Defendants have available to them general defenses to a

---

**3.** Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b); (1982).

**4.** Transaction causation is the "but for" requirement in a section 10(b) case. *See In re Catanella and E.F. Hutton, Inc., Securities Litigation,* 583 F.Supp. 1388, 1414 (E.D.Pa.1984).

fraud on the market allegation.[5] One of these defenses is that plaintiff would have purchased the stock even if he had known of the misrepresentation. Plaintiff admits that he believed the value of Technicom stock was over-inflated at the time of his decision to sell short. As an experienced investor, Zlotnick knew that Technicom stock was selling at a ratio the equivalent of fifty percent its annualized earnings. (Am.Comp. ¶ 21). Based upon his own belief that the stock price was significantly inflated, plaintiff decided to engage in a short sale. The only reasonable inference that can be drawn from the pleadings is that plaintiff suspected that material information was not known by the market and that skewed the stock price. It could have made no difference to the short sale decision that the lack of information was accidental or intentional. The decision to engage in the short sale was a decision to profit from the overvaluation of the price of the stock. Plaintiff independently made this investment decision. Now upon realizing a loss on his bet against the market, he attempts to shift the risk of loss. The shifting of loss to the deepest pocket after assuming a loss on a gamble is impermissible. *See Rifkin v. Crow*, 574 F.2d 256, 261 (5th Cir.1978); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 884–85 (5th Cir.1973).[6]

Plaintiff contends that he has satisfied the reliance causation requirement of a 10b–5 action by presumption. To support his theory that a presumption of reliance causation should arise in this case, plaintiff initially cites to the Ninth Circuit's opinion in *Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir.1975). In *Blackie*, the Ninth Circuit recognized that in exceptional situations, individual "transaction causation" can be inferred from allegations of material misrepresentation. The holding in *Blackie* was based on the court's belief that innocent investors, who are individual members of a class of investors and who rely on the validity of the existing open market price, should be protected against material misrepresentations which make unreliable the market information used to make the transaction. 524 F.2d at 907. Therefore, "proof of subjective reliance on particular misrepresentations is unnecessary to establish a 10b–5 claim for a deception inflating the market price of a stock traded in the open market." *Id.* The court, however, tempered this liberalized pleading requirement by stating that, in some circumstances, the presumption is rebuttable. Defendants may rebut a prima facie case of causation in one of two ways: "1) by disproving materiality or by proving that, despite materiality, an insufficient number of traders relied to inflate the price;" or 2) "by proving that an individual plaintiff purchased despite knowledge of the falsity of a representation, *or that he would have, had he known of it.*" *Id.* at 906. (Emphasis added).[7] In *Sharp v. Coo-*

---

**5.** Defenses to fraud on the market available to a defendant include: 1) that the market did not respond to the misrepresentation; 2) that plaintiffs knew of the falsity of defendant's representation; 3) that plaintiffs would have purchased the stock even if they had known of the misrepresentation; 4) that the misrepresentations were not material. *Peil* at 1160.

**6.** Defendant also suggests that this court should reject the "fraud on the market" theory because plaintiff purchased his Technicom shares in the private market. This argument is frivolous. The fraud on the market theory proffered by plaintiff is based on an investor's reliance on the integrity of the open market. The issue of whether the actual purchase is made in the open or private market is irrelevant to the decision of whether to apply the reasoning of *Blackie*. *See Peil, supra; Lipton v. Documation, Inc.*, 734 F.2d 740, 746 n. 8 (11th Cir.1984).

**7.** Plaintiff also directs this court to the opinion of the federal district court in *Fausett v. American Resources Management Corp.*, 542 F.Supp. 1234 (D.Utah 1982). In *Fausett*, the court extended the reasoning of *Blackie* to a 10b–5 action for alleged misrepresentation of fraud that occurred after the commitment to make a short sale, but prior to the investor's decision to cover the short sale. The court rejected, out of hand, the fraud on the market theory, but nevertheless concluded that a rebuttable presumption of reliance arises when an innocent investor relies on open-market factors to make a short sale, but is induced to cover his short position at substantially inflated prices resulting from defendant's manipulative practices. *Id.* at 1238–39.

Even assuming that it is based on sound legal reasoning, I decline to apply the rationale of *Fausett* for the following reasons. First, in the instant case, much of the alleged activity occurred prior to the decision to short sell. Fur-

*pers & Lybrand,* 649 F.2d 175, 186–89 (3rd Cir.1981), the Third Circuit impliedly rejected any uniform requirements for the application of the shifting burdens of proof enunciated in *Blackie.* *Id.* at 187.[8] The court carefully avoided any mention of the theory and the *Blackie* case. However, recognizing the Supreme Court's admonition that a presumption of reliance in favor of a 10b–5 plaintiff may attach in some situations, *Id.* (citing *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972)), the court embraced a flexible approach to the issue of the requisite proof of reliance/causation. Rather than establishing a bright-line rule, the circuit court stated that it would presume reliance where "it is logical to do so." *Id.* (citation omitted).[9] In light of the facts in this action I find it would be illogical to find that plaintiff's short sale was caused by defendant's actions.

Plaintiff seeks damages under sections 9(a)(2) and (a)(4) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78i (1982). To establish such a claim plaintiff is required to show reliance on the alleged omissions or misrepresentations. *See e.g., Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1162 n. 20 (5th Cir.1982)

*vacated and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983). Since I have concluded that there is no transaction causation under § 10, the causation element cannot be established under § 9 either.

■ Similarly, since plaintiff has failed to state a cause of action under the securities laws, he cannot state any claim that can serve as a predicate offense under RICO. *In re Catanella,* 583 F.Supp. at 1425; *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

For the reasons stated above, defendants' motion to dismiss is granted on all counts.

---

ther, what conduct allegedly occurred was very similar in nature to the conduct which allegedly occurred before the obligation to buy was made. The investor, Zlotnick, relied on the lack of integrity of the market as a basis for his short sale. The same type of alleged deceptive practices which caused him to gamble (and also served as a shield against financial loss because the investing public was unaware of the deceptive market value) now serve as his offensive weapon in trying to recover the fallout from his folly. Zlotnick, an experienced investor, simply relied on the same type of conduct which allegedly continued until his decision to cover, when he made the initial decision to short sell. *Compare* Am. Compl. at ¶ 25 with Am. Compl. at ¶ 19. For example, plaintiff admits that in the summer of 1983, after his decision to short sell and his concomitant obligation to cover was made, the market for Technicom gradually began to correct itself to reflect the stock's true value. The inflation of the value of the stock and the market's gradual self-correcting mechanism worked. Although they may have taken longer than Zlotnick expected, the subsequent price drop in the stock did reflect its true value.

Second, *Fausett* allows a defendant to rebut plaintiff's presumption of reliance/causation where defendant can show that he would have made the same investment even if he knew of the misrepresented facts. Here, plaintiff counted not only on the company's artificial inflation of the stock, but also the public's lack of awareness of such artificiality in order to profit. Plaintiff's own allegations in his complaint rebut any presumption of reliance/causation.

**8.** Plaintiffs began this action by filing a petition for class certification. Since the named plaintiff has failed to state a claim, the issue of class certification is moot. Fed.R.Civ.P. 23(a)(3), (4).

**9.** In *Peil* the court stated that its adoption of the fraud on the market theory was a continuation of its reasoning in *Sharp.* The court held that the lynchpin of the reliance requirement of a 10b–5 action—the causal connection between defendants' actions and plaintiff's purchase of stock—can be fulfilled without proving direct reliance on plaintiff's misrepresentation. Under *Peil,* plaintiff is not required to show reliance on defendants' action, but he is still required to show causation. *Peil,* n. 11 at 1161.