ROBERT N. KEELY and GEORGE PFEIFFER, JR., complainants-respondents,

v.

HENRY M. BLACK, defendant-appellant,

FARMERS TELEPHONE COMPANY and NEW YORK TELEPHONE COMPANY, defendants-respondents.

[Submitted March term, 1920.    Decided June 14th, 1920.]

Where the president of a company acquires stock in that company by purchase, and, subsequently, sells the stock so acquired, together with the stock he owned prior to such purchase, to another, he is not acting in a fiduciary capacity as to the company of which he was president, and is not liable to account to the stockholders of that company for his profits in the transaction.

On appeal from a decree advised by Vice-Chancellor Backes, reported in *90 N. J. Eq. 439.*

*Mr. Harold B. Wells,* for the appellant.

*Mr. Martin V. Bergen* and *Mr. Thomas P. Curley,* for the complainants-respondents.

*Mr. David A. Newton,* for the New York Telephone Company.

*Messrs. Collins & Corbin,* for the Farmers Telephone Company.

The opinion of the court was delivered by

KALISCH, J.

The complainants, Robert N. Keely and George Pfeiffer, Jr., holders of eighty shares of stock of the Farmers Telephone Com-

pany, filed their bill of complaint on behalf of themselves and all other stockholders of that company who were desirous of joining in the suit as parties complainants.

The bill is founded upon the theory that Henry M. Black, who was the president of the Farmers Telephone Company, violated the trust and confidence reposed in him as such officer and director of the company, in that he secured the transfer of certain property rights of the company, and the control of the company to the New York Telephone Company, whereby he secretly profited to the extent of $28,635; and, therefore, the complainants ask for relief that he be compelled to account to and pay over to the Farmers Telephone Company the sum alleged to have been received by him as secret profits, and any other profits which he may make by reason of a certain contract entered into between him and the New York Telephone Company.

The court of chancery decreed and ordered that Henry M. Black pay to the Farmers Telephone Company the sum above stated, with interest thereon from March 14th, 1919, and to pay a counsel fee of $500 to complainants' counsel. From that decree the appellant, Henry M. Black, appeals to this court.

The facts are these: The Farmers Telephone Company was the owner of a telephone system which covered an area of about four hundred and fifty square miles, and was operated in Burlington, Monmouth and Ocean counties, under an agreement with the Delaware and Atlantic Telegraph and Telephone Company and the New York and New Jersey Telephone Company, both of the latter companies being part of the Bell system, by which the Farmers Telephone Company received fifteen per cent. of toll messages in its territory. Under this arrangement the latter company obligated itself to install the telephones and appurtenant equipment. In June, 1917, the cantonment, known as Camp Dix, at Wrightstown, was constructed by the federal government as a training camp. The cantonment was within the territory of the Farmers Telephone Company. While the cantonment was being put in order for the reception and accommodation of troops, the federal government desired telephonic service provided, and arranged for such service with the Farmers Tele-

phone Company. It seems that the government was desirous of having the Bell system, which was under the control of the New York Telephone Company and the Delaware company, installed, and to accomplish this end those companies entered into an arrangement with the appellant, president of the Farmers Telephone Company, to take the work of installation and operation off the hands of the latter company, and this was done. The proofs show, and it is practically conceded by the complainant, that it was a financial benefit to the Farmers Telephone Company to be released from the obligation of installing and operating this service. The agreement further provided that the Farmers company should receive from the Bell companies five per cent. the first year of the toll messages within the released territory, and ten per cent. thereafter. It is conceded that at the time of the making of this agreement the Farmers company owed about $11,000, and that the estimated cost to build a telephone system in the cantonment was $50,000. The agreement was signed by the appellant, president of the Farmers company, and was shortly thereafter ratified by the board of directors. In consideration of the various undertakings by the companies, the agreement provided that Mr. Black should acquire and turn over to the Bell companies a controlling interest in the Farmers company, through the acquisition of its stock. He was to acquire for the companies the whole of the outstanding stock, and if he could not accomplish this, then to acquire all that he was able to over and above fifty-one per cent., and as an inducement to do this the companies agreed to pay him a bonus over the par value of the stock. The Farmers company was capitalized at $100,000, divided in two thousand shares of $50 par. Mr. Black owned in his own right about five hunderd shares which he transferred to the companies. Together with the stock he acquired from other stockholders he delivered to the companies one thousand nine hunderd and nine shares and received $28,635. None of the stockholders who sold his share to Mr. Black is here complaining. He acquired all shares except the eighty shares held by the complainants, by paying par value for each share. For the stock acquired by him from other stockholders, consisting of one thou-

sand four hundred shares and transferred to the companies, he received a bonus from the companies of $21,000. The $28,635 decreed by the vice-chancellor to be paid to the Farmers company included the bonus which Mr. Black received from the companies for the transfer of his own shares of stock he originally owned.

The dominating idea pervading the vice-chancellor's conclusions is, that Mr. Black in acquiring the stock of the stockholders and selling the same, together with his own to the telephone companies acted in a fiduciary capacity. In this view we cannot acquiesce. It is true that in bringing about a transfer of the telephone business of the cantonment he was acting in a fiduciary capacity, and any profit he might have made out of that transaction he should account for to his *cestui que trust*. The proof fails to show that he received anything from the Bell companies or any other source on that account. The moneys paid to him were for his services in acquiring and transferring the stock, and in doing that he did not occupy a position of trust with relation to the company of which he was president. It seems to us that he had a perfect right, as an individual, to purchase the stock from the holders thereof at such prices as he and they should agree on, and after buying it he was entitled to sell it again for such price as he and a purchaser should agree on. In these transactions he occupied no relation of trust either to the Farmers company or to the various stockholders. For it is important to observe that he was not dealing with the property of the company, but with his own, the title to some of which he derived from other stockholders. That is the significant feature of the present case, which distinguishes it from the cases relied on by the respondents.

Moreover, it is a fact not to be overlooked, that although the bill of complaint was filed for the benefit of all stockholders who may see fit to come in, that none of them has seen fit to do so, and the natural inference is that none has any complaint to make.

It is further to be noted that to carry out the decree of the court below would lead to an anomalous situation. For, as it appears, the holder of all the stock of the Farmers Telephone

Company, except the eighty shares of the two complainants, is the Bell company, and its holdings are some nineteen hundred and odd shares, out of the total issue of the two thousand. Now, if the money received by Black above the par value of the shares is to be paid back to the Farmers company, the result is that the Bell company, after having made the contract regarding the purchase of the stock with Black, and having paid its money in performance of the contract, will get back nineteen-twentieths of the amount so paid. We cannot conceive of a more unjust and inequitable result than to force the Bell company to take back this money which it paid in good faith and for the return of which it does not ask.

The decree of the court below is reversed, with costs.

*For affirmance*—None.

