**In re ORFA SECURITIES LITIGATION.**

Civ. A. Nos. 86–1121(SSB), 86–1462(SSB), 86–1555(SSB) and 86–1589(SSB).

United States District Court, D. New Jersey.

Feb. 10, 1987.

Silverman & Harnes by Sidney B. Silverman, New York City, for plaintiffs Meno Shir and Looking Sharp, Inc.

Brown & Connery by Steven G. Wolschina, Westmont, N.J., Liaison Counsel for plaintiffs.

Donald B. Lewis, Philadelphia, Pa., Chairman of plaintiffs' Executive Committee.

Schnader, Harrison, Segal & Lewis by Charles C. Hileman, Philadelphia, Pa., Kenney & Kearney by Joseph H. Kenney, Cherry Hill, N.J., for individual defendants.

Moss, Powers & Lezenby by William R. Powers, Jr., Moorestown, N.J., for defendant ORFA Corp. of America.

David B. Zlotnick, Bala Cynwyd, Pa., Garwin, Bronzaft & Gerstein by Bruce E. Gerstein, Silverman & Harnes by Joan T. Harnes, New York City, for the Derivative plaintiff.

Gross & Sklar, P.C. by Eugene A. Spector, Philadelphia, Pa., Members of plaintiffs' Executive Committee.

Rudolph, Seidner, Goldstein, Rochestie & Salmon, P.C. by Robert M. Roseman, Philadelphia, Pa., Stull, Stull & Brody by Jules

Brody, Wolf, Popper, Ross, Wolf & Jones by I. Stephen Rabin, Howard B. Sirota, P.C. by Moshe Balsam, New York City, for plaintiffs.

BROTMAN, District Judge:

I. Procedural and Factual Background

Plaintiffs by their consolidated amended class action and derivative complaint, filed May 12, 1986, ("Complaint"), sued defendants, pursuant to their claim that defendants harmed plaintiffs by artificially inflating the price of ORFA common stock. Plaintiffs, individuals[1] and one corporate entity, ("Plaintiffs"), are shareholders of ORFA common stock who purchased such stock at various times during 1985 and 1986. As explained in Part IV–B of this opinion, the court finds that the class period for this action is April 1, 1985, to January 20, 1986, inclusive ("Class Period"). All the named plaintiffs are individuals residing in states other than New Jersey, except for derivative plaintiff, Looking Sharp, Inc., which is a corporation organized and operating from the state of Florida. Defendant ORFA Corporation, ("ORFA" or "Corporate Defendant"), is a corporation duly organized under the laws of the state of Utah with its principal executive offices in the state of New Jersey. ORFA's common stock is traded on the national over-the-counter market. ORFA is a development stage enterprise engaged in the marketing and developing of waste processing facilities utilizing a technology which employs a proprietary solid waste material recovery process that produces usable end products. Individual defendants ("Individual Defendants") are four officers of ORFA who served the corporation at some time during the Class Period. Each Individual Defendant owned between 10% and 15% of ORFA's outstanding common stock at some point during the Class Period. Individual Defendants Kaye and Kohn are residents of New Jersey. Individual Defendant Moore is a resident of Pennsylvania. Individual Defendant Hutchison's residence is in dispute. Plaintiff asserts Hutchison's residence is Texas and defendant asserts it is Switzerland.

The Complaint alleges five counts. Count I is brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), ("Act"), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986) ("10b–5"). Count II and Count III are brought pursuant to common law fraud and deceit and negligent misrepresentation. Count IV is brought pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* (1983) ("RICO"). Count V is brought as a derivative cause of action on behalf of ORFA against the Individual Defendants pursuant to the common law of fiduciary obligations. Plaintiffs seek damages and costs under all counts in addition to an accounting under Count V. Jurisdiction of this court over Count I and Count IV is pursuant to 15 U.S.C. § 78 aa and 18 U.S.C. § 1964(c), respectively. Jurisdiction of these claims being proper pursuant to 28 U.S.C. § 1331, the remaining common law claims, Counts II, III, and V[2], are properly before the court pursuant to the principles pendent jurisdiction. Plaintiffs seek to certify this action as a class action pursuant to Fed.R.Civ.P. 23 with a class period extending from April 1, 1985, (the date of filing with the Securities and Exchange Commission of ORFA's Form 10–K for the year ended December 31, 1984), to January 31, 1986, (eleven days following the publication of the Barron's article disclosing the alleged misrepresentation and omissions of ORFA Corporation and its officers) ("Defendants"). Oral argument on Defendants' motion to dismiss

---

**1.** Plaintiff, Robert Zlotnick, was withdrawn as a class representative per request of the court, order filed October 28, 1986. The court indicated that since Robert Zlotnick was the brother of class counsel there would result an inevitable appearance of impropriety. Plaintiffs, Ida Harap and Seymour Harap, withdrew as named plaintiffs pursuant to a stipulation and order filed October 17, 1986. Plaintiff, Meno Shir, withdrew as a named plaintiff pursuant to a stipulation and order filed September 19, 1986.

**2.** Plaintiffs assert that the court has diversity jurisdiction over the derivative claim, Count V, based upon 28 U.S.C. § 1332.

Counts II, III, and V, of the Complaint was held on September 5, 1986. Oral argument on Plaintiffs' class certification motion was held on October 27, 1986. The court reserved opinion on both matters at the time of oral argument.

Presently before the court are three basic issues: (1) is there a cause of action under New Jersey common law for a derivative plaintiff seeking relief from individual corporate officers who trade individually owned corporate stock on the basis of insider information, (part II of this opinion)? (2) is the exercise of pendent jurisdiction over state law claims, Counts II and III brought as a class action, appropriate for this court, (part III of this opinion)? and (3) if class certification is appropriate, what is the proper class period, (part IV of this opinion)? The court finds that a claim by a derivative plaintiff against corporate officers trading individually owned shares on the basis of insider information does state a claim upon which relief can be granted. The court finds that the exercise of pendent jurisdiction over Counts II and III is proper. Therefore Defendants' motion to dismiss Counts II, III, and V, is denied. The court grants Plaintiffs' motion for class certification and finds the appropriate class period to be April 1, 1985, to January 20, 1986, inclusive.

The gravamen of Plaintiffs' Complaint is two-fold: (1) ORFA Corporation and its officers issued false and misleading statements about ORFA for the purpose of artificially inflating the price of ORFA common stock; and (2) Individual Defendants took advantage of information obtained as corporate officers and used it for personal advantage to the detriment of the corporation and its shareholders in selling individually owned shares. The alleged misrepresentations were contained in different reports or news releases of ORFA over a time period extending from December 31, 1984, to January 8, 1986. The cited reports include: (1) ORFA's Form 10–K, fiscal year ending December 31, 1984; (2) ORFA's 1984 Annual Report; (3) ORFA's Form 10–Q, for quarter ended June 30, 1985; (4) ORFA's Form 10–Q, for quarter ended September 30, 1985; and (5) ORFA's Form 8–K, December 3, 1985. The cited news releases include: (1) April 1985, as reported in the Wall Street Journal; (2) July, 1985 "Update;" (3) October, 1985, as reported in Forbes; and (4) January 8, 1986, as reported in the Philadelphia Inquirer. Plaintiffs' salient allegations of misrepresentation, Complaint at ¶¶ 25–42, include misleading statements and omissions pertinent to (1) the status of ORFA's contractual negotiations for the construction of the ORFA process facilities, (2) the status of ORFA's state of the art technology; (3) the overall position of ORFA in the waste processing market; and (4) the status of ongoing construction projects. Plaintiffs allege that said misrepresentations concerning "the ORFA process and the future prospects of the Company," caused the value of ORFA stock to rise significantly and lead to increased trading during the Class Period. Defendants deny such allegations.

Plaintiffs further allege that named Individual Defendants sold amounts of their individually owned ORFA stock over a four-month period of October, 1985, to January, 1986, inclusive. See Complaint at ¶ 43. Defendants admit to selling shares of their individual holdings of ORFA common stock during this time, in the approximate percentage of their total holdings: Kohn, 4.4%; Kaye, 3.1%; Moore, 1.3%; and Hutchison, 2.4%. See Individual Defendants' Answer to Consolidated Amended Complaint ¶ 42. Plaintiffs allege that Individual Defendants took advantage of the inflated price of ORFA stock by selling individually held shares for personal gain prior to a January 20, 1986, Barron's article which disclosed certain information concerning the Defendants. Plaintiffs allege that the Barron's article entitled "A Touch of Alchemy? How to Turn Trash into $90 Million," revealed material misrepresentations and omissions made by Defendants.[3]

---

**3.** Plaintiffs described the material misrepresentations and omissions disclosed by the article as follows:

It is undisputed that the value of ORFA stock dropped in the week after publication of the article. Plaintiffs allege a $2.25 drop per share in one week. Complaint at ¶ 44. The court reporter's stenographic record reflects that at oral argument on the class certification motion, Defendants asserted that the value of the stock dropped some 50% from Friday, January 20th, to Monday, January 23rd.

## II. Derivative Action Based on Insider Trading

### A. Background

Count V of the Complaint seeks equitable and legal relief for Plaintiff Looking Sharp, Inc. derivatively on behalf of ORFA against Individual Defendants for violations of New Jersey common law. Specifically, Count V alleges that the Individual Defendants violated their fiduciary obligation to the corporation and its stockholders by using "material non-public insider information" for their own personal profit in deciding to sell their individually owned stock in ORFA. The count alleges substantial damage to ORFA resulted from Defendants' sale of stock. In addition the count alleges that a demand to the corporation to remedy these alleged wrongs would have been futile in that the Individual Defendants constituted a majority of the ORFA Board of Directors and therefore could not diligently prosecute this action because in effect that would require the Individual Defendants to prosecute themselves. Simply put, the count seeks to establish a common law right of action for a derivative plaintiff against a corporate officer who has traded stock of the corporation on the basis of inside information. Defendants seek to dismiss Count V, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action upon which relief can be granted under New Jersey law.

All counsel acknowledge that this specific issue raised under New Jersey common law is an issue of first impression. This court is mindful of the limitations on a federal court sitting in diversity (the alleged basis of jurisdiction of Count V) on a question of state common law. In deciding whether such a new cause of action should be allowed, this court must confine itself to the developments of New Jersey law. *See Novosel v. Nationwide Insurance Co.,* 721 F.2d 894, 897 (3d Cir.1983) (citations omitted).

There is some dispute among the litigants as to how many other states have created or considered a common law derivative action on the basis of insider trading. It is clear that four states have squarely addressed the issue and others have discussed it in dicta. Of the four states squarely addressing the issue, two, New

On January 20, 1986, *BARRON'S* published an article entitled "A Touch of Alchemy? How to Turn Trash Into $90 Million." The *BARRON'S* article revealed the following material facts regarding ORFA, which had either not been disclosed by the Company or had been disclosed in a misleading manner:

(a) that, of the Company's $4.8 million net worth, some $4.7 million consisted of intangible license and patent rights, the values of which is unclear;

(b) that ORFA's technology had only been put into practice once in a small demonstration plant and that it was questionable whether the technology would work on the scale of the much larger facilities supposedly planned by ORFA;

(c) that the so-called "joint venture" among ORFA, Thyssen Rheinstahl, Daniel International and Southern Electric did not involve any firm commitment by the latter companies and that those companies had declined an offer to buy a stake in ORFA;

(d) that construction of the lead projects in Philadelphia and Somerville, Massachusetts, purportedly proceeding on a "fast track," in fact had yet to get off the ground, that no money had been obtained to build either plant, and that no commitments had been obtained with respect to the sale of the plants' end products;

(e) that all of the money raised to finance the Philadelphia project was being held in escrow pending a satisfactory credit rating on the project, which had not been obtained;

(f) that the Somerville project had not received necessary governmental approval and that city officials were skeptical about ORFA's ability to make the project work; and

(g) that major investors in ORFA, including defendants Kaye, Hutchinson, and Kohn had recently registered significant quantities of ORFA stock for potential sale to the public. *See* Complaint at ¶ 43.

York and Delaware, have created such a cause of action.

The New York case of *Diamond v. Oreamuno*, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969), contains the fuller discussion of the two. *Diamond* relied on the Delaware case of *Brophy v. Cities Service Co.*, 31 Del.Ch. 241, 70 A.2d 5 (1949), in establishing the cause of action. 24 N.Y.2d at 500, 301 N.Y.S.2d at 82, 248 N.E.2d at 913. *Diamond* itself held that officers of a corporation breached their fiduciary duty to the corporation by trading in that corporation's stock on the basis of material non-public information accessible to them as a result of their position with the corporation, 24 N.Y.2d at 502–03, 301 N.Y.S.2d at 84–85, 248 N.E.2d at 914–15. The *Diamond* court explicitly refused to condition the claim on a showing of harm to the corporation. 24 N.Y.2d at 499, 301 N.Y.S.2d at 81, 248 N.E.2d at 912. However, the court did suggest that an inference of harm to the company's reputation and capability of management, could easily be made where "officers and directors abuse their position in order to gain personal profits." 24 N.Y.2d at 499, 301 N.Y.S.2d at 82, 248 N.E.2d at 912.

Defendants in the case at bar argue that the *Diamond* rational is based exclusively in the court's view that remedies for shareholders suing directors for insider trading were inadequate at the time, 1969. Brief of Individual Defendants To Dismiss at 10. A full reading of *Diamond* shows that the decision was grounded both in that court's interpretation of the laws of fiduciary obligations and the need for effective remedies. The court found that one "who is entrusted with potentially valuable information, may not appropriate that asset for his own use...." 24 N.Y.2d at 499, 301 N.Y.S.2d at 81, 248 N.E.2d at 912; *see also* 24 N.Y.2d at 497, 301 N.Y.S.2d at 80, 248 N.E.2d at 911 (A fiduciary "is not free to exploit that knowledge or information for his own personal benefit.") (citing New York law and 100 A.L.R. 680). In addition to the court's view that such behavior by directors violated their fiduciary duty, the court found that such directors could be held to account for any profits derived from the behavior.

In short, the *Diamond* court grounded the cause of action in its view that a director who profits from his use of information obtained as a result of his fiduciary capacity has been unjustly enriched. 24 N.Y.2d at 501, 301 N.Y.S.2d at 84, 248 N.E.2d at 914. The court found articulation of this principle at various sources, *see Brophy;* Securities Exchange Act of 1934, § 16(b), 15 U.S.C. § 78p(b); Restatement Second, Agency § 388 comment (c), and deemed the alleged wrongdoing an appropriate subject for the application of common law fiduciary obligations, 24 N.Y.2d at 504, 301 N.Y.S.2d at 86, 248 N.E.2d at 915. The court also addressed the need to deter such behavior, 24 N.Y.2d at 499, 503, 301 N.Y.S.2d at 81, 85, 248 N.E.2d at 912, 915, and create effective remedies for fiduciary breach by a director, 24 N.Y.2d at 502–03, 301 N.Y.S.2d at 84–85, 248 N.E.2d at 914–15.

Since *Diamond,* two courts have explicitly rejected creating a *Diamond*-type cause of action. These include the Florida Supreme Court and the Seventh Circuit Court of Appeals applying Indiana law. The Florida case, *Schein v. Chasen,* reached the Florida courts by way of the state certification procedure. 478 F.2d 817 (2d Cir.1973) *vacated and remanded sub nom. Lehman Brothers v. Schein,* 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) on certification to Fla.Sup.Ct., 313 So.2d 739 (Fla.1975). The Florida Court refused to create the *Diamond*-type cause of action noting that state precedent required "actual damage" to the corporation be alleged. 313 So.2d at 76. The Seventh Circuit Court of Appeals, applying Indiana law, came to a similar result, finding as a matter of law that under the *Diamond*-type cause of action "there is no injury to the corporation which can serve as a basis for recognizing a right of recovery in favor of the latter." *Freeman v. Decio,* 584 F.2d 186, 192 (7th Cir.1978). The *Freeman* court reasoned that the unfairness of insider trading was borne primarily by traders not the corpora-

tion itself. *Id.* at 194. The court found the harm to the corporation to be too speculative and too indirect to support a derivative cause of action. *Id.* In rejecting the *Diamond* court's view, the *Freeman* court also found that since the time of *Diamond,* "the 10b–5 class action has made substantial advances toward becoming the effective remedy for insider trading that the court of appeals hoped that it might become." *Id.* at 195.

Since the *Diamond* case was decided, only *Schein* and *Freeman* have decided the issue presented by the case at bar. Other courts have noted in dicta the existence of a common law derivative claim based on insider trading under New York law, but have not reached a decision on whether or not to apply the law in their respective jurisdictions. *See Fausett v. American Resources Management Corp.,* 542 F.Supp. 1234, 1240 (D. Utah 1982); *Ferris v. Polycast Technology Corp.,* 180 Conn. 199, 206, 429 A.2d 850, 853 (1980); *Katz Corp. v. T.H. Canty & Co.,* 168 Conn. 201, 210–11, 362 A.2d 975, 980 (1975).

■ The question of whether a derivative claim on the basis of insider trading states a cause of action under New Jersey law appears to be a question of first impression. For the reasons stated below this court finds that the derivative action states a claim upon which relief can be granted. Therefore Defendants' motion to dismiss Count V of the Complaint is denied.

**B. New Jersey Law**

**1. Conflicts**

As an initial matter, the court finds that New Jersey law is applicable to the question at issue. New Jersey conflicts of law questions are resolved under the "interest analysis" which weighs the interests and contacts of the states involved. *Henry v. Richardson-Merrell Inc.,* 508 F.2d 28 (3d Cir.1975). The New Jersey rules require the application of the law of the state with the most significant contacts to the dispute. *Baron & Co., Inc. v. Bank of New Jersey,* 504 F.Supp. 1199, 1204 (D.N.J.1981). Under New Jersey law, the choice of law rules

determining questions of a corporate officer's duties are typically determined by the law of the state of incorporation, " 'except where, the respect to the particular issue, some other state has a more significant relationship.' " *Francis v. United Jersey Bank,* 162 N.J. Super. 355, 368–69, 392 A.2d 1233, 1240 (1978) *aff'd* 87 N.J. 15, 27–28, 432 A.2d 814, 820 (1981) (quoting Restatement (Second) of Conflicts § 309 (1971)).

■ It is undisputed that ORFA although incorporated in Utah has its principal place of business in New Jersey. Many of the acts complained of which formed the gravamen of this Complaint took place in New Jersey and none took place in Utah. Under the above noted conflicts rules, it is clear that New Jersey law applies to the questions raised by Count V of the Complaint.

**2. Common Law of Fiduciary Obligations**

Under New Jersey common law there can be no doubt that corporate officers have a fiduciary duty to both the corporation and its shareholders. *Hill Dredging Corp. v. Risley,* 18 N.J. 501, 530, 114 A.2d 697, 712 (1955); *Daloisio v. Peninsula Land Co.,* 43 N.J.Super. 79, 88, 127 A.2d 855, 890 (1956). This duty demands the "utmost fidelity" and "absolute good faith" on the part of a corporate officer in all dealings with the corporation. *Daloisio,* 43 N.J.Super. at 88, 90, 127 A.2d at 890, 892; *see also Judson v. Peoples Bank and Trust Co.,* 25 N.J. 17, 28, 134 A.2d 761, 767 (1957); *Papalexiou v. Tower West Condominium,* 167 N.J.Super. 516, 527, 401 A.2d 280, 286 (1979).

To say that the corporate director owes a fiduciary duty to the corporation does not end the inquiry; it merely begins it. As the Supreme Court pointed out in the related context of construing the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79, one must go on to define the duty.

But to say that a man is a fiduciary only begins the analysis; it gives direction to

further inquiry. To whom is he a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?

*S.E.C. v. Chenery Corp.*, 318 U.S. 80, 85–86, 63 S.Ct. 454, 458–59, 87 L.Ed. 626 (1943).

This court finds a foundation in New Jersey law for the proposition that a corporate director may not exploit inside information for personal gain. *Judson*, 25 N.J. at 29, 134 A.2d at 767; *Hill*, 18 N.J. at 531, 114 A.2d at 712. Under New Jersey common law this proposition has been applied to contracts between directors and their corporations.

It is a rule firmly imbedded in our jurisprudence that directors of a corporation may not enter into a contract or other transaction with their own corporation without the knowledge and consent of the stockholders. The object of the rule is to prevent directors from secretly using their fiduciary position to their own advantage and to the detriment of the corporation and other stockholders.

*Hill*, 18 N.J. at 531, 114 A.2d at 712 (citations omitted). Although this proposition has not been applied to the insider trading situation under New Jersey law, the duty of a corporate director to refrain from self-dealing based on information obtained as a result of a director's position of fiduciary responsibility cannot be ignored.

He who is in such a fiduciary position cannot serve himself first and his *cestuis* second.... He cannot utilize his insider information and his strategic position for his own preferment.... Where there is a violation of these principles, equity will undo the wrong or intervene to prevent its consummation.

*Pepper v. Litton*, 308 U.S. 295, 311, 60 S.Ct. 238, 247, 84 L.Ed. 281 (1939) (discussing claims of a corporate officer against the corporation in a bankruptcy proceeding). The fiduciary duty to abstain from self-dealing is enforceable under the common law of New Jersey. *Hill*, 18 N.J. at 531, 114 A.2d at 712 (Contracts between directors and their corporations are subject to close judicial scrutiny.); *Daloisio*, 43 N.J.Super. at 94, 127 A.2d at 893 ("The propriety of judicial supervision to prevent or redress fraudulent or inequitable conduct on the part of directors has never been questioned.").

Defendants cite New Jersey law for the proposition that a corporation has no interest in its outstanding stock nor in the trading of individual shareholders, even that of directors. *See Treadway Companies Inc. v. Care Group*, 638 F.2d 357, 376 (2d Cir. 1980) (applying New Jersey law); *Keely v. Black*, 91 N.J. Eq. 520, 111 A. 22, 23 (N.J. App.Ct.1920). This court refuses to apply this general proposition blindly without even considering the nexus between the trading of an individual director and the allegations of fraud associated with such trading.

*Treadway* quotes *Fletcher Cyclopedia* which applies the proposition only where the director acts in good faith.

Ordinarily a director possesses the same right of any other stockholder to deal freely with his shares of stock and to dispose of them at such a price as he may be able to obtain, *provided the director acts in good faith*, since the corporation as such has no interest in its outstanding stock or in dealing in its shares among its stockholders.

*Treadway*, 638 F.2d at 376 (quoting 3 *Fletcher, Cyclopedia of the Law of Private Corporations* § 848 (perm. ed. 1975) (emphasis added)); *cf. Daloisio*, 43 N.J.Super. at 93, 127 A.2d at 893 ("The *Ellerman* rule, granting wide discretion to corporate directors, is sound, but is obviously inapplicable to a situation involving fraud, self-dealing, or unconscionable conduct.") (citation omitted); *see also Katz*, 168 Conn. at 210, 362 A.2d at 980.

The *Keely* case involved a transaction by which defendant corporate officer, Mr. Black, acting as president of Farmers' Telephone Company negotiated a deal with Bell Companies, a second phone company, for installing phone service to a military camp after Farmers' had already obtained the

contract to install the service. Following this deal the corporate officer purchased a majority of the corporate stock of Farmers' at par value and sold it to the second company. *Keely*, 111 A. at 22. The court found that "[t]he proof fails to show that he [Black] received anything from Bell companies or any other source," *id.* at 23, for executing the sale of Farmers' rights to Bell to install the service. *Id.* The court found that Black received bonuses for the stock sale, but ruled that such activity was outside the scope of his fiduciary relationship with the corporation. *Id.* at 23. This court does not find the *Keely* reasoning applicable to the factual allegations of fraud based on the fiduciaries' position of trust presented by the Complaint in the case at bar. The Complaint in the case at bar alleges that Defendants "artificially inflated" the value of ORFA stock and then exploited inside information to the detriment of the corporation. These allegations of bad faith connecting the sale of individual officers' stock with bad faith actions taken by these officers in their fiduciary capacity sets apart the case at bar from *Keely*. Defendants' application of *Keely* to the case at bar is out of step with contemporary securities fraud problems, *see* Insider Trading Sanctions Act of 1984, 15 U.S.C. §§ 78t(d), 78u(d)(1)(2); Uniform Securities Code of New Jersey, N.J.Stat.Ann. 49:3–52 (West 1967), and more recent state law decisions, *Hill*, 18 N.J. at 531, 114 A.2d at 721; *Daloisio*, 43 N.J.Super. at 94, 127 A.2d at 893. The *Keely* decision cannot be read to stand for the proposition that directors are free to trade in their owns shares, regardless of whether or not such trading can be linked to bad faith actions taken by a fiduciary officer.

The *Freeman* court, which rejected a derivative cause of action under Indiana law, rested its decision mainly on a finding that the corporation would be unable to show significant harm flowing from insider trading. 584 F.2d at 192. In support of this conclusion the *Freeman* court applied the "corporate opportunity doctrine" [4] to the facts of the complaint and found "there is no way that the corporation could have used the information to its own profit," 584 F.2d at 193. This court cannot take such a limited view of potential harm to the corporation at this stage of the proceeding. For purposes of a motion to dismiss, this court accepts the well-plead allegations of the complaint. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Seiler v. E.F. Hutton & Co., Inc.*, 584 F.Supp. 607 (D.N.J.1984). The Complaint alleges, and it is undisputed, that ORFA stock dropped percipitously in the wake of the disclosures made by Barron's on January 20, 1986. The Complaint alleges an ongoing fraud from September of 1983 to January of 1986, based on nondisclosure by corporate directors. The Complaint alleges that the defendant directors, with an awareness of material information withheld from the public, sold their own stock in the final months of this period, prior to the Barron's disclosures.

Breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation. *Fausett*, 542 F.Supp. at 1240 (applying tort analysis to a securities fraud claim). This court has found that a corporate director's fiduciary obligation requires that such director refrain from seeking personal profit by exploiting insider information. Accepting the non-moving party's allegations, this court finds that the derivative plaintiff should be allowed the opportunity to prove breach, harm, and causation. It is not necessary to speculate at this stage whether plaintiff will be able to prove harm to corporate goodwill, *see Fausett*, 542 F.Supp. at 1241; *Diamond*, 24 N.Y.2d at 499, 301 N.Y.S.2d at 82, 248 N.E.2d at 912–13, or some other type of

**4.** Thus, while courts will require a director or officer to automatically account to the corporation for diversion of a corporate opportunity to personal use, they will first inquire to see whether there was a possibility of a loss to the corporation—*i.e.*, whether the corporation was in a position to potentially avail itself of the opportunity—before deciding that a corporate opportunity in fact existed.
*Freeman*, 584 F.2d at 193 (footnote omitted)

harm to the corporation. That will be plaintiffs' burden at trial.

This court recognizes the expansion of securities fraud remedies under Rule 10b–5, since the *Diamond* decision. *Freeman,* 584 F.2d at 195. However, these remedies do not recognize a cause of action for a derivative plaintiff. The state is not precluded from regulation in this area. *See* Securities Exchange Act of 1934, § 28, 15 U.S.C. § 78bb. Defendants argue that the possibility of double liability weighs against the creation of such a cause of action. *See Freeman* 584 F.2d at 195. *But see Diamond,* 301 N.Y.2d at 86, 248 N.E.2d at 715. However, the court recognizes the possibility of two distinct harms here, one to the corporation and one to the shareholders. *See Bateman Eichler, Hill Richards v. Berner,* 472 U.S. 299, 105 S.Ct. 2622, 2630, 86 L.Ed.2d 215 (1985). In any event that question need not be resolved at the motion to dismiss stage. The court finds that a derivative cause of action against corporate officers for trading on the basis of insider information does state a claim for which a derivative plaintiff may attempt to show damages.

### C.  Rule 23.1 Requirements

■ As a final note the court notes that Individual Defendants have moved to dismiss the Complaint for procedural defects under Fed.R.Civ.P. 23.1. The purpose of this rule is to ensure that a derivative claim has basis in fact, and is not a strike suit. *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). The *Surowitz* court held that mere noncompliance with the verification requirement is not grounds for dismissal, "where plaintiff has diligently investigated the possible charges prior to filing the Complaint." *Weisfeld v. Spartans Industries, Inc.,* 58 F.R.D. 570, 577, (S.D.N.Y.1972). The Seventh Circuit has found the verification requirement to be met where plaintiff's counsel attests to the truth of certain facts in the complaint and attests to information and belief to other elements of the complaint. *Hirshfield v. Briskin,* 447 F.2d 694 (7th Cir.1971). In regard to the required allegation of noncollusion, this court sees no hint of collusion on the record. In light of the above, the court will not dismiss Count V of the Complaint, but will require derivative plaintiff to file an affidavit verifying the Complaint and serve it upon Defendants within ten (10) days of this order. *Markowitz v. Brody,* 90 F.R.D. 542, 549–550 n. 2 (S.D.N.Y.1981); *Weisfeld,* 58 F.R.D. at 578.

### III.  Pendent Common Law Claims

#### A.  Background

■ Defendants have moved for dismissal of Count II and Count III of the Complaint arguing that these counts are not appropriate for the exercise of pendent jurisdiction, Fed.R.Civ.P. 12(b)(1). Count II alleges common law fraud and deceit and Count III alleges negligent misrepresentation. Defendants' attack on these counts consist of arguments that the counts are not properly maintainable as class actions under Fed.R.Civ.P. 23. For the reasons stated below the court finds that class certification and the exercise of pendent jurisdiction in regard to Count II and Count III are appropriate. Therefore, Defendants' motion to dismiss Count II and Count III is denied.

Pendent jurisdiction is a discretionary doctrine which requires the court to consider "judicial economy, convenience, and fairness." *Shaffer v. Board of School Directors,* 730 F.2d 910, 911 (3d Cir.1984) quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The operative test to apply to pendent jurisdiction questions is whether the state claims are derived "from a common nucleus of fact" as the federal claims. *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. In the case at bar the resolution of the class certification motion pertaining to the common law counts is determinative of the pendent jurisdiction question. Rule 23(a) and (b) establish five criteria to be applied to class certification questions.

Rule 23(a)[5] establishes four prerequisites to a class action, which will be referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. Rule 23(b)[6] adds an additional requirement. The 23(b) requirement applicable in the case at bar is 23(b)(3) which requires that classwide questions of fact or law predominate over individual questions and that a class action be superior to other methods for adjudication of the controversy.

Although a class certification question does not pertain to the merits of a cause of action, but only the requirements of Rule 23, *Glictronix Corp. v. American Telephone and Telegraph Co.*, 603 F.Supp. 552, 584 (D.N.J.1984), here the court must look far enough to determine if the cause of action survives a motion to dismiss. Defendants basically make a two-pronged attack on the suitability of the common law claims being brought as a class action. Firstly, Defendants argue that common law fraud and misrepresentation require proof of individual reliance. Therefore under Rule 23(b)(3) the court should find that individual fact inquiries into reliance predominate over common classwide questions and deem the class action unmanageable

and inappropriate. Secondly, Defendants argue applicable conflicts of law rules require that the law of each plaintiffs' state be applied to plaintiffs' claims. Consequently, this court would have to apply numerous state law fraud doctrines, a task which would be unmanageable and inappropriate. Defendants' arguments will be discussed in order.

### B. Questions of Actual Reliance

In analyzing class actions under Rule 10b–5, several federal jurisdictions have found that the presence of individual questions of reliance (or actual reliance) do not preclude a finding that common questions of law and fact predominate. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).[7] An exception to the reliance argument exists under Rule 10b–5. A rebuttable presumption of reliance arises when a defendant " 'fails to disclose material facts which it has a duty to disclose' or misrepresents itself in 'prepared or disseminated' documents." *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 546 (E.D.Pa.1976) (citations

---

**5.** Rule 23(a) provides in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**6.** Rule 23(b) provides in pertinent part:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members

of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**7.** The essential purpose behind proving reliance in actions brought pursuant to securities legislation is to establish a causal connection between plaintiff's injury and defendant's conduct. Proving reliance is necessarily difficult, if not impossible, however, where the alleged misstatements or omissions have affected the stock market and damaged plaintiff only through their effect on the market. The fraud on the market theory addresses this problem. The central assumption of the theory is that the market price of a stock reflects all representations made by defendant with respect to that stock. *Rosenberg v. Digilog Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 92,274 at 91,895 (E.D.Pa.1985) (citations omitted).

omitted) *aff'd* 649 F.2d 175 (1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *see also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Where such a presumption does not arise, separate hearings can be held to determine reliance questions, and the action could proceed as a class action. *Sharp,* 70 F.R.D. at 547. However in analyzing pendent common law claims for securities fraud, there is a sharp split in authority on whether questions of individual reliance make individual questions predominate. There does not appear to be any common law exceptions to the requirement of individual reliance (analagous to the judicially created Rule 10b–5 exceptions). *B.F. Hirsch v. Enright Refining Co., Inc.,* 751 F.2d 628, 631 (3d Cir. 1984) (applying New Jersey law); *see also Tober v. Charnita,* 58 F.R.D. 74, 84 (M.D. Pa.1973). Some courts have dismissed class actions brought under common law fraud theories because of the "actual reliance" requirement. *Rosenberg v. Digilog Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 92,274 at 91,-895 (E.D.Pa.1985). The *Rosenberg* court allowed class certification for the Rule 10b–5 claim. *Id.* Some courts have found that the fact that reliance varies with the knowledge and circumstances of the individual investor makes class certification inappropriate for common law fraud claims. *In re Consumers Power Co. Securities Litigation,* 105 F.R.D. 583, 609 (E.D.MI 1985). These courts have not found the possibility of separate trials on reliance questions to be a viable strategy to maintaining these types of class actions. *Tober,* 58 F.R.D. at 84. *But see Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 151 (N.D.Ill.1982) ("If necessary, the court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact."); *In re Fiddler's Wood Bondholders Litigation,* No. 83–2340 (E.D.Pa.1984) (Tr. 19) ("On that aspect, it is my intention to see if we can devise a procedure, perhaps the use of questionnaires, whatever, and for a period of time we will attempt to deal with the common law claims along with the federal

securities claim ..."); *Caleb & Co. v. E.I. DuPont de Nemours & Co.,* Fed.Sec.L. Rep. (CCH) ¶ 92,739 at 93,594 (S.D.N.Y. 1986) ("[C]onsideration of the individual issues can later be decided through a separate trial or through the use of a special master.") (citations omitted); *see also Dekro v. Stern Bros. & Co.,* 540 F.Supp. 406, 418 (W.D.Mo.1982) ("Nevertheless, this court believes in those instances where reliance is genuinely disputed, the parties and the court should be able to fashion a workable arrangement for trying the issue without destroying the efficacy of class proceedings on other issues.") (citations omitted).

In instances where class certification of pendent state claims went unchallenged, many courts have certified the class of investors for both the federal securities law and common law claims. *Eisenberg,* 776 F.2d at 774, 786; *Harmsen v. Smith,* 693 F.2d 932, 937 (9th Cir.1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Weinberger v. Jackson,* 102 F.R.D. 839, 841, 846 (N.D.Cal.1984); *Ridings* 94 F.R.D. at 149 & n. 2.

Plaintiffs have cited to the court three cases which certified a class on pendent securities fraud claims after explicit consideration of the predominance issue as it pertains to common law fraud claims. The earliest of the cases involved a securities fraud action arising out of the sale of tax exempt bonds issued by Colorado water districts. *Dekro,* 540 F.Supp. at 409. Defendant allegedly underwrote and resold the bonds without disclosing material facts concerning a development corporation within one of the districts. The development corporation subsequently went bankrupt and the water districts defaulted on their obligations. *Id.* Plaintiff investors filed a class action under common law and federal securities laws.

On a class action decertification motion, defendants argued that questions of individual reliance and conflicts of laws made the common law claim unsuitable for class action treatment. 540 F.Supp. at 418. The court rejected this argument on the issue

of individual reliance. The court found after considering the overlapping nature of the proofs under federal and state claims that judicial economy, the best interests of the parties, fairness, and convenience, indicated that all claims should be heard in one action. *Id.* A similar position was taken in the case of *Fiddler's Wood,* at Tr. 19, 20.

In the recent case of *Finkel v. O'Brien,* the court certified a class action on pendent federal securities claims. No. 85–2539 slip op. at 20–21 (D.N.J. May 23, 1986) [Available on WESTLAW, DCTU database]. In discussing the typicality requirement the court found questions of individual reliance did not render plaintiffs' claims atypical.

> Because these acts by defendants, if true would have affected all the class members as well as the named plaintiffs and because defendants are not alleged to have taken any actions that are unique to the named plaintiffs, I find that the typicality requirement is met.

*Id.*

In the case at bar the relevant facts underlying the claims of fraud and negligent misrepresentation consist entirely of reports and news releases issued by ORFA from September, 1983, to January, 1986. Specifically, these reports included ORFA's Form 10–K (fiscal year 1984), Complaint at ¶¶ 25–29; ORFA's 1984 Annual Report, Complaint at ¶¶ 30–35; ORFA's Form 10–Q's (second and third quarter 1985), Complaint at ¶¶ 37, 38; ORFA's Form 8–K (dated December 3, 1985), Complaint at ¶ 39; and a series of four news releases issued in 1985 and 1986, Complaint at ¶ 40. These same releases are the gravamen of all of the Plaintiffs' counts for relief including those under Rule 10b–5 and common law.

■ The elements of fraud under New Jersey law [8] are (1) material misrepresentation of fact, (2) knowledge of falsity by person making the representation, (3) intent that the misrepresentation be relied on, and (4) reliance in the misrepresentation. *B.F. Hirsch,* 751 F.2d at 628; *Enright v. Lubow,* 202 N.J.Super. 58, 493

A.2d 1288 (App.Div.1985). In considering the type of proofs Plaintiffs will attempt to make based on the above described ORFA releases, it is clear that common issues of fact and law will predominate over individual issues. The Complaint is devoid of any allegations of personal contact or personalized representations to any of the shareholders. Shareholders will attempt to make out their claims on the basis of the alleged deception and falsity of the reports, filed forms, and news releases of ORFA.

■ The court finds that the questions of actual reliance do not render class treatment of the pendent claims unworkable. There is a limited factual basis for the claims of fraud and misrepresentation in this case. The core elements of the tort of fraud: material misrepresentation, knowledge of falsity, and intent, must be argued on the basis of the identical facts for all the members of the class. Considering the total lack of personal contact between the defendants and class members, the actual reliance argument will not be amenable to significant variation among class members. This court simply does not see actual reliance as an issue requiring such a level of individualized attention that class certification is inappropriate.

> It should be noted that varying issues of reliance exist in practically all securities class actions. Even if plaintiff Finkel relied on her stockbroker's advice, that reliance would not be sufficient to defeat class action certification. Indeed, it is typical, rather than atypical, for shareholders to rely on various sources of information including stockbrokers in making investment decisions.

*Finkel,* at 14 (citing *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 139 (D.N.J.1984). Class certification is particularly appropriate in the case at bar because "there are no individual acts of fraud or misrepresentation alleged." *In re Victor Technologies Securities Litigation,* 102 F.R.D. 53, 59 (N.D.Cal.1984).

In the event that some significant variation of reliance argument is presented to

8. *See* Part III–C of this opinion for conflicts of law discussion.

the court, mechanisms are available to effectively litigate the reliance issues. *See Riding,* 94 F.R.D. at 151 (separate hearings); *Fiddler's Woods,* at Tr. 19 (use of questionnaires); *Caleb,* ¶ 92,739 at 93,594 (use of special master); *see also Dekro,* 540 F.Supp. at 418.

■ The court also finds that there will be a considerable overlap of evidence and proofs between the common law claims and the federal securities claims. Common law of fraud, including New Jersey common law, and the elements of fraud under the securities laws consist of the core elements of material misrepresentation and justifiable reliance. *See Koch Industries, Inc. v. Vosko,* 494 F.2d 713, 717 (10th Cir.1974) (In affirming a finding of securities fraud under federal and pendent claims the court commented, "these are the findings as to the active fraud.... They are clear, direct, and leave no room for any inferences. They contain all the elements of common law fraud."). *See also Restatement (Second) of Torts* §§ 537, 538 (1976); *Enright,* 202 N.J.Super. 58, 493 A.2d 1288.

One of the main purposes of Section 10b is to provide redress for fraudulent dealings by insiders. *Chiarella v. United States,* 445 U.S. 222, 231, 235, 100 S.Ct. 1108, 1116, 1118, 63 L.Ed.2d 348 (1980); *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Defendants have argued that the standard of proof for fraud under New Jersey law, (clear and convincing) differs from the Rule 10b–5 standard, (preponderance of the evidence). Brief of Individual Defendants In Support of Motion to Dismiss at 20. However, it is clear that similar or identical proofs will be introduced for the pendent claims and the federal claims. Defendants have not pointed to any alleged individual acts of fraud or misrepresentation, nor have Defendants shown that the required evidence on both sets of claims will not be the same. *Finkel,* at Tr. 21; *Victor,* 102 F.R.D. at 59. In conclusion the court finds that the questions of actual reliance inherent in the pendent fraud claims do not render the treat-

ment of such claims unmanageable or inappropriate for class certification. The court finds that the common questions of law and fact predominate over questions of actual reliance.

### C. Conflict of Laws

■ Defendants argue that under appropriate choice of law rules, the law of each class member's residence must be applied to the pendent claims. Defendants contend that this requirement would render a class action unsuitable. Both parties agree that the conflicts rule of the forum state New Jersey must be applied to the pendent claims. The choice of law rule in New Jersey is known as the "governmental interest" approach. *Henry v. Richardson-Merrell, Inc.,* 508 F.2d at 32. The courts have developed a two-step analysis in applying the rule.

The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. *Id, see also White v. Smith,* 398 F.Supp. 130, 134–35 (D.N.J. 1975) (The judicial as well as social consequences of the selection of an applicable law merit consideration.).

■ A federal court applying New Jersey law recently rejected the argument that the application of different state laws to pendent securities fraud claims would render the class unmanageable. *Finkel,* at Tr. 21. The court assumed arguendo that the law of each plaintiff's state would apply, but found defendants' showing of differences among state law fraud doctrines to be lacking. *Id, see also In re Pizza,* ¶ 92,537 at 93,216 ("It is evident that the similarities in these laws vastly outweigh any differences."); *Dekro,* 540 F.Supp. at 418. This court finds that Defendants have not shown that the differences in state law doctrines of fraud and negligent misrepresentation would be substantial

enough to lead the court to deny certification of the class.

■ Upon consideration of the New Jersey conflicts rules and the policies underlying Rule 23, this court will apply New Jersey law to the pendent claims.

In *Phillips Petroleum Co. v. Shutts*, the Supreme Court established a threshhold inquiring to be resolved before a court undertakes a conflicts analysis. 472 U.S. 797, 105 S.Ct. 2965, 2981, 86 L.Ed.2d 628 (1985). *Shutts*, requires sufficient contact between the forum states and the claims. *In re Pizza*, ¶ 92,537 at 93,214. In the case at bar, Defendants have their principle place of business in New Jersey and all the alleged misrepresentation originated from New Jersey.

Applying the governmental interest test to the case at bar, it is clear that every involved state has an interest in preventing fraud carried out against its residents. Both the common law and statutory law of New Jersey demonstrate the state's strong policy of preventing securities fraud. *See* N.J.Stat.Ann. 49:3–52 (1967); *Finkel*, at 11. It is also clear that although each Plaintiff may not have had direct contact with New Jersey, the Defendants had their principle place of business in New Jersey and the alleged misrepresentations which serve as the gravamen of the Complaint originated in New Jersey.

Defendants argue that the applicable law in a fraud case must be the law of the state where plaintiff acted in reliance, so as to give principal concern to the protection of plaintiffs. Individual Defendants' Brief to Dismiss at 19 (citing E. Scoles and P. Hay, *Conflicts of Laws* 607 (1982)). The court finds however that the relevant interests and contacts of New Jersey with these claims support the application of New Jersey law. The California case of *In re Pizza*, which confronted a similar class certification question in a case of pendent securities fraud claims, is most instructive. The court notes that both New Jersey and California apply a "governmental interest" analysis to conflicts question. *See Fleury v. Harper & Row, Publishers, Inc.*, 698

F.2d 1022 (9th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). The New Jersey approach was modeled after that of California. *See Henry*, 508 F.2d at 32 n. 8 ("In stating its approach to governmental interest, the New Jersey courts rely on earlier cases from California.") (citations omitted). In New Jersey the two part test examines interests and contacts of the relevant jurisdictions. The similar California test has been articulated as a three part analysis. In California, the interest analysis is supplemented by a "constructive impairment" element.

First a court must examine the substantive law both in the foreign jurisdiction and in California to determine if these laws differ as applied to the facts of the particular case. Next, if the laws differ as applied, then the court determines whether both jurisdictions have an interest in having their laws applied. Finally, if they both have such an interest, then there is a "true conflict," and the court employs the "comparative impairment" approach to determine which jurisdiction's interest would be more impaired if its policy were subordinated to the other. The conflict should be resolved by applying the law of the jurisdiction whose interest would be more impaired if its law were not applied.

*In re Pizza*, ¶ 92,537 at 93,216 (citations omitted).

In applying this test the court found each state to have a significant interest and that the fraud laws of each state were more similar than different. The court found that each state's interest in protecting victims of fraud would be more advanced by providing the plaintiffs with an opportunity to litigate. *Id.* As a practical matter, the court recognized that providing such opportunity required a class action due to the complexity and expense of litigation and the relatively small recoveries of individual plaintiffs. *Id.* These same policies underlying class actions have been applied to securities fraud claims in this jurisdiction. *Finkel*, at Tr. 11, 18. The court finds that the Defendants are not prejudiced by the

application of New Jersey law to the Plaintiffs' claims. Defendants chose to use New Jersey as their principle place of business and cannot claim surprise at being held to the state's legal standards. *See Francis,* 162 N.J.Super. at 368–69, 392 A.2d at 1240. In light of the substantial contacts between New Jersey and Defendants' business and alleged fraud, the court finds that New Jersey law applies to the pendent claims. In addition considering the policies underlying class actions, the court finds that such an action is the superior method for adjudication of this controversy.

In conclusion the court rejects Defendants' arguments pertaining to the predominance of individual questions over common questions and the choice of law rules. The motion to dismiss Count II and Count III is denied.

### IV. Class Certification

#### A. Prerequisites

Having concluded that individual issues do not predominate over common issues of law and fact, and that a class action is a superior method for adjudication of this controversy, it is clear that all requirements of Rule 23 are met.

■ Plaintiffs have estimated that there are approximately 1,593 potential class members. In light of this large number of investors, the variety of residences, and the probability of many relatively modest claims, it is clear that joinder is impracticable. *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Defendants do not contest the numerosity prerequisite and the court finds that Rule 23(a)(1) is satisfied.

The common questions of law and fact requirement has been discussed at length in Part III of this decision. The court finds that Rule 23(a)(2) is satisfied.

The typicality requirement has also been discussed at length in Part III of this decision. Defendants do not contest the typicality prerequisite and the court finds that Rule 23(a)(3) is satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." A two-prong test has been applied in assessing adequacy of representation: "(1) whether the named plaintiffs have interests antagonistic to the class, and (2) whether the plaintiffs' attorney is qualified to conduct the proposed litigation. *Data Access,* 103 F.R.D. at 140 (citations omitted). Defendants opposed class representative Robert Zlotnick. At the request of the court, Plaintiffs withdrew Robert Zlotnick as a class representative, filed October 28, 1986. The court indicated that since Robert Zlotnick was the brother of class counsel there would result an inevitable appearance of impropriety. Defendants have not opposed other class representatives or class counsel. The court finds the requirements of Rule 23(a)(4) are satisfied.

Finally, the court finds that the requirements of Rule 23(b)(3) are satisfied, as discussed in Part III of this opinion.

#### B. The Class Period

■ The remaining question is the proper duration of the class period. Plaintiffs seek class certification on behalf of themselves and all purchasers of ORFA securities for a period from April 1, 1985, to January 31, 1986, inclusive. January 31st is the date eleven days after the publication of the January 20, 1986, Barron's article which revealed the alleged misrepresentations and omissions of Defendants. Defendants oppose the closing date arguing that the class should close on January 20, 1986. This is the date of publication of the Barron's article which alleged information contradictory to ORFA's past press releases and reports. The article painted an extremely negative portrait of ORFA's financial and development position. The court reporter's stenographic record of oral argument on the motion for class certification indicates a representation by Defendants unopposed by Plaintiffs, that ORFA stock dropped nearly fifty per cent (from 6⅛ to 3½) on January 20, 1986. Defendants contend that anyone who traded in

ORFA stock after January 20th was in an entirely different legal position than those who traded before. Plaintiffs responded at oral argument that January 31, 1986, was a reasonable closure date because it allowed time for the market to assimilate the information of the Barron's article. The appropriate legal inquiry to determine the duration of the class period looks for a time when the securities law violations are terminated by curative information. *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982). "[The] test is a preliminary merits determination whether the facts which underlie the gravamen of plaintiff's complaint continue to represent a reasonable basis on which the individual purchaser on the market would rely." *Data Access*, 103 F.R.D. at 143.

 Others courts deciding such issues have found that the publication of information in the press or the issuance of press releases exposing the alleged misrepresentations cuts off the time period that one could reasonably rely on the misrepresentations. *Cohen v. Uniroyal Inc.*, 77 F.R.D. 685, 688, 696 (E.D.Pa.1977); *McFarland*, 96 F.R.D. at 364. Plaintiffs cite the case of *In re AM International Securities Litigation*, for the proposition that a press release cannot as a matter of law "cure the market." 108 F.R.D. 190, 192–93 (S.D.N.Y. 1985). However *AM International* is distinguishable on the facts. *Compare AM International* 108 F.R.D. at 193 n. 4 (press release was ambivalent, it could "have encouraged investment") *with In re LTV Securities Litigation*, 88 F.R.D. 134 (N.D. Texas 1980) (cited at 108 F.R.D. at 193) (press release which served to cut off class was clear and unequivocal). In the case at bar, the Barron's article was clear and unequivocal as to exposing Defendants' alleged misrepresentations. Plaintiffs also argue that because the release was not made by ORFA itself, it did not cure the market. The relevant question is only whether the article made it unreasonable to continue relying on the alleged misrepresentations, not who was responsible for the article. *Data Access*, 103 F.R.D. at 143–44. The court finds that the Barron's article

clearly had a curative effect on the market. Those who invested after its publication were in a significantly different posture in regards to reliance than those investors who traded before the article. Therefore, Plaintiffs' class will be certified for the time period April 1, 1985, to January 20, 1986, inclusive.

In conclusion, the court denies Defendants' motion to dismiss Counts II, III, and V, of Plaintiffs' Complaint. The court grants Plaintiffs' motion for class certification; and finds the class period to be April 1, 1985, to January 20, 1986, inclusive. An appropriate order will follow.